229 S.W.2d 323 (1950)
BRADEMEYER
v.
CHICKASAW BLDG. CO., et al.
Supreme Court of Tennessee.
March 17, 1950.
On Petition to Rehear April 29, 1950.
*324 Walter P. Armstrong, Jr., and Thomas R. Prewitt, Memphis, Tenn., Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel, for plaintiff in error.
Canale, Glankler, Loch & Little, Memphis, John R. Gilliland, Memphis, for defendants in error.
TOMLINSON, Justice.
During the course of washing windows in the office building of Chickasaw Building Company in April 1949, Roy H. Brademeyer fell to the street and was killed. His widow, Mrs. Ethel B. Brademeyer, brought this suit to recover workmen's compensation for the benefit of herself and the dependent children of the deceased. It was the finding and judgment of the trial court that (1) the deceased was working as an independent contractor and (2) his work was casual. Hence, that the case did not fall within the Workmen's Compensation Law. Code, § 6851 et seq.
This is the appeal of Mrs. Brademeyer from that judgment. It is her insistence that the law applicable to the undisputed evidence establishes it as a fact that her husband was an employee within the meaning of the Workmen's Compensation Act rather than an independent contractor, and that the work was not casual.
Eliminating unnecessary details, the facts are that Chickasaw Building Company owned and operated the building involved as an office building for rent of offices to the public. Janitor and like services, including the washing of the nine hundred and sixty windows in the building, were services furnished the tenants. The employees at the building, other than the officers and clerical force, were under the supervision and control of a superintendent of the building.
Until sometime in 1945 the window washing was done by one of the janitors. His employment was terminated at that time for some reason, and the work of cleaning the windows was then taken over by Brademeyer, who advertised himself as a window cleaner. At the time of his death, he performed this service for about thirty business buildings and residences.
The understanding had between Chickasaw Building Company and Brademeyer was that he was to clean the windows once every two months, and was to receive a compensation of fifteen (15¢) cents per window. He furnished the cleaning equipment. This was a water bucket, brush, squeegie and sponge. The Company owned a safety belt, but he responded to its suggestion that he use this belt with the statement that he preferred his hands. He was suffering from rheumatism on the day of his death, but declined the suggestion of the building engineer that he forego working that day.
Nothing was said between the parties as to whether Chickasaw relinquished the rights to control the method of cleaning the windows. It did not in fact exercise such control. However, there is no evidence of dissatisfaction with his services or his manner of performance. To the contrary, these seemed to have been satisfactory to Chickasaw.
Brademeyer came and went as he pleased, started cleaning operations when he pleased, and skipped such days during the cleaning period as suited his convenience. On isolated occasions he was requested to clean the windows in a particular office at a particular time, so as to be ready for a new tenant. Sometimes he responded, and sometimes he did not.
His son, at the age of sixteen, began to help him, and so continued for the two remaining years of Brademeyer's life. On perhaps a few occasions Brademeyer procured *325 the help of some one else. He personally paid these helpers. They were procured without consulting Chickasaw, and Chickasaw made no objection to such help.
Brademeyer's name did not appear on the books of the Company where the names of the employees were recorded. It did appear on those books in the miscellaneous building account. A list of the employees was furnished by Chickasaw Building Company for the city directory. Brademeyer's name was not on that list.
The Company paid Federal Social Security Tax on Brademeyer, one-half thereof being paid out of his earnings. When the management of the building was placed under a new superintendent in the fall of 1948 a new bookkeeper was installed in January following. When in February Brademeyer presented her with a bill for some windows that he had washed she discovered the fact that Social Security Tax was being paid on his earnings. She questioned him with reference to the propriety of this and he said that he "wanted it that way". She referred the matter to the superintendent. He directed her to let it go on that way for a while as it did not amount to much. No Social Security Tax was paid on Brademeyer's son or any other helper he might have had, it being paid only on Brademeyer and computed on the total amount paid him. That was the situation with reference to this tax at the time of Brademeyer's death.
The Company deducted the Federal Income withholding tax from Brademeyer's earnings whenever those earnings were more than the exemption. The amount withheld was always small, and nothing had been withheld during 1949 because the amount earned was less than the exemption.
Workmen's compensation insurance was carried on Brademeyer, the insurer being Maryland Casualty Company, one of the defendants in error. This is explained without contradiction by the defendants in error as being the result of the method pursued in ascertaining the amount of the premium to be paid for the policy carried on the employees of Chickasaw Building Company. In the payment of the Social Security Tax, Chickasaw enumerated on its report to the Government the names of those on which it was paying the tax and the earnings on which the tax was paid as to each of those persons. Brademeyer's name appeared on that report. The practice of the Maryland Casualty Company was to use the Social Security list prepared by Chickasaw in computing the amount of the premium to be charged for the insurance it was carrying. In this way, it resulted that workmen's compensation insurance was carried on Brademeyer.
The insistence made in behalf of Mrs. Brademeyer is that the payment of the Federal Social Security Tax on Mr. Brademeyer and the fact that workmen's compensation insurance was carried upon him is conclusive evidence, as a matter of law, that Mr. Brademeyer was an employee of Chickasaw within the meaning of the Workmen's Compensation Act. In support of this insistence reference is made to Employers' Liability Assur. Corp. et al. v. Warren, 172 Tenn. 403, 112 S.W.2d 837; Carter v. Hodges, 175 Tenn. 96, 132 S.W.2d 211; and McDonald v. Dunn Construction Co., 182 Tenn. 213, 185 S.W.2d 517. When the holding in each of those cases is analyzed, and there is taken into consideration the reliance of the last two mentioned of these cases upon what was mistakenly said in Carter v. Hodges to have been the holding in Employers' Liability Assur. Corp. v. Warren, it is to be seriously doubted that these cases conclusively support this insistence made in behalf of Mrs. Brademeyer. However, the carrying of such compensation insurance on Mr. Brademeyer, the payment of the Federal Social Security Tax on his employment, and the withholding from his earnings of an income tax amount to at least some evidence that he occupied the status of an employee rather than that of an independent contractor.
The contract in the instant case was oral. The controlling facts are undisputed *326 and clear. Therefore, whether the status of Brademeyer to Chickasaw was that of an employee within the meaning of the Workmen's Compensation Act or that of an independent contractor is a question of law. Mayberry v. Bon Air Chemical Company, 160 Tenn. 459, 465, 26 S.W.2d 148.
In ascertaining whether a given contract establishes an employer-employee status or that of an independent contractor the decisive fact always is whether the party for whom the work was being done had the right of control in the doing of that work. Powell v. Virginia Construction Co., 88 Tenn. 692, 13 S.W. 691, 17 Am. St. Rep, 925; Odom v. Sandford & Treadway, 156 Tenn. 202, 208, 299 S.W. 1045. It is not a question of whether the right was exercised. The question is whether the right existed. Odom v. Sandford & Treadway, supra; Sledge v. Hunt, 157 Tenn. 606-610, 12 S.W.2d 529.
It is clear from this record that Chickasaw had the right to discharge Brademeyer at any time it so elected. In the case of Odom v. Sandford & Treadway, supra, this Court held that: "The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." 156 Tenn. at page 210, 299 S.W. at page 1047.
The undisputed proof is that nothing was said between Chickasaw and Brademeyer as to the right of control. It follows, therefore, that Chickasaw did not relinquish that right. So, the situation established by the undisputed evidence is that Chickasaw (1) had the unrestricted right to terminate the services of Brademeyer at any time, and (2) did not relinquish its right of control. Those two controlling elements existed in the case of Frost v. Blue Ridge Timber Corp., 158 Tenn. 18, 11 S.W.2d 860. Based upon those facts, this Court held: "It appears to the court, therefore, that the contract of employment was one by which the employer simply agreed to pay Frost for hauling the lumber according to the amount hauled, with no relinquishment by the employer of the right to control the means and method by which the hauling was to be done. While working under such a contract, Frost was an employee and not an independent contractor, insofar as the application of the Compensation Law to the contract of employment is concerned." 158 Tenn. at page 21, 11 S.W.2d at page 861.
Under the authority of the holding in the cases to which reference has just been made, it is necessary to conclude that Bradmeyer was an employee of Chickasaw, and not an independent contractor, within the meaning of the compensation law.
On principle the same conclusion necessarily follows. The fact that Chickasaw had the right to discharge Brademeyer at any time with or without cause and the fact that Chickasaw did not relinquish its right of control of the manner in which Brademeyer was to do this work are facts, each of which is entirely repugnant to the definition of an independent contractor.
In concluding discussion of this phase of the case, and because some emphasis, at least in the proof, has been placed upon the matter, it is appropriate to observe that the necessary conclusion that Brademeyer's status was that of an employee rather than that of an independent contractor is a conclusion which is not inconsistent with the fact that Brademeyer was paid by the piece, Phillips v. Tennessee Eastman Corp., 160 Tenn., 538, 543, 26 S.W.2d 1051, nor with the fact that he paid from his own earnings his son or some one else at times to help him do this work for which he was paid by the piece. Finley v. Keisling, 151 Tenn. 464, 474, 270 S.W. 629.
The Workmen's Compensation Act, Code, § 6856 (b) provides that the Act shall not apply to "any person whose employment *327 at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer". The trial judge, under the authority of Gibbons v. Roller Estates, Inc., 163 Tenn. 373, 43 S.W.2d 198, held that Brademeyer's employment at the time of his accident was casual. Hence, that his case did not come within the Act. His widow assigns this as error.
In Gibbons v. Roller Estates, supra, the business of the defendant was the operation of an office building. It was having some of these offices repainted on the occasion in question. Young Gibbons was employed to assist in that work, and while doing so was accidentally killed. It was held that the repainting of some of the offices was outside the usual course of the business of the employer in operating an office building; hence, that the work was casual. It was likened unto the building of a garage or other repair or permanent improvement work. In our opinion, the case is not in point in the instant case. Window washing is not something in the nature of a repair or permanent improvement.
In the instant case the cleaning of the windows in each and every office was as much a part of the regular service rendered by Chickasaw to its tenants as was the sweeping and otherwise cleaning of the offices. The only possible difference between the two services is that in the usual course of this business it was necessary to sweep the floors, etc., once every twenty-four hours, whereas, it was necessary to wash the windows once every sixty days. This difference in the length of time between services can make no difference in principle. The one service was as regularly rendered as was the other. Both were in the usual course of the regular services rendered to and expected by the tenants. Each, therefore, comes within the very language of the statute. In Gibbons v. Roller Estates it was observed that an employee comes within the statute "is engaged with reference to the usual course of the master's trade, business, etc., * * * although his employment itself is casual as distinguished from regular employment." 163 Tenn. at page 376, 43 S.W.2d at page 199.
We see no escape from the conclusion that Brademeyer was employed in the usual course of Chickasaw's business in the cleaning of these windows at the regular interval of each sixty days. The assignment of error directed to the holding of the Court to the contrary must be sustained.
The judgment of the Court below will be reversed, the cause remanded for further proceedings in accordance herewith, and costs of appeal adjudged against defendants in error.
PREWITT, J., not participating.

On Petition to Rehear.
TOMLINSON, Justice.
The petition of Chickasaw Building Company and Maryland Casualty Company to rehear states that it is filed because "they have been deprived of their right to be heard in this Court on the grounds upon which this case was decided, for the reason that the decision was based upon grounds not raised by plaintiff, either by brief or in oral argument, and consequently not argued by the defendants."
Mrs. Brademeyer's second assignment of error was: "The Court erred in finding and holding that petitioner's decedent, at the time of his death, was an independent contractor and not an employee of the defendant, Chickasaw Building Company".
The opinion of this Court, after discussing what it considered to be the undisputed facts and the authorities, held: "Under the authority of the holding in the cases to which reference has just been made, it is necessary to conclude that Brademeyer was an employee of Chickasaw, and not an independent contractor, within the meaning of the compensation law."
It was neither intended nor realized that the opinion "announces a truly revolutionary doctrine", nor that it is "supported by no authority", all, as asserted by the petition to rehear. A rather close re-examination *328 of the record, and the authorities, and the opinion has not revealed such a drastic, unprecedented result.
Although the petition is very earnestly and rather ably presented, its contents are such that we find it difficult to respond without repeating what has already been said in the opinion. It may be that the facts existing at the time Chickasaw employed Brademeyer will furnish some assistance in determining the accuracy of the conclusion reached.
Until Brademeyer went there in 1945 the windows of this building had been washed by a colored porter. The superintendent engineer, who is still in the employ of the building, testified that "I had a nigger that worked for me there and the nigger went off on a vacation and died. So Mr. Fall employed Mr. Brademeyer. * * * For a long time I checked Mr. Brademeyer, but I quit that because everything was all right". Responsive to the next question he said that by "checking" that he meant "checked to see that he washed and what floors he washed on".
Mr. Althauser, who took over the management of the building after Chickasaw acquired it in the fall of 1948, says that he made an investigation and "ascertained the general manner in which Mr. Brademeyer's window cleaning had been done before", and the fact that his compensation had been 15c per window, and then entered into the following contract with Mr. Brademeyer:
"I told him to go ahead as we had in the past, to go ahead and wash the windows just as we had been doing. I mentioned nothing as to how he was to do it. I mentioned nothing about when he was to do it. The only question was that he get around to them and present his bill when they were done. I reserved no right to tell him how to do it or when to do it as I had on these that I made up the pamphlets for.

* * * * * *
"I didn't tell him: I reserved no right of any control over him, but our employees. * * * I had conferences with them. I said: I want you to do it this way; I want you to do it that way. But I didn't tell Mr. Brademeyer, I reserved no right to tell you."
Compare the Frost v. Blue Ridge Timber Corp. contract, 158 Tenn. 18, 11 S.W.2d 860.
There can be no doubt of it being a fact that under this contract Chickasaw had the right to tell Brademeyer what to do and the manner in which it was to be done and the right to dismiss Brademeyer at any time with or without cause. Frost v. Blue Ridge Timber Corp., supra, 158 Tenn. 20-21, 11 S.W.2d 860. Such a contract is entirely repugnant to an independent contractor status. On the other hand, none of the acts subsequently occurring, including the two items hereinafter discussed, deprived Chickasaw of or affected its indubitable right under the contract to control the manner in which the work should be done or its right to dismiss Brademeyer at will without cause. Therefore, the employment continued until the death of Brademeyer to be one which was entirely repugnant to an independent contractor status. Hence, there is no evidence to support the findings of the Trial Court that Brademeyer's status was that of an independent contractor. Powell v. Virginia Construction Co., 88 Tenn. 692, 13 S.W. 691, 17 Am. St. Rep. 925; Odom v. Sandford & Treadway, 156 Tenn. 202, 208, 299 S.W. 1045; Sledge v. Hunt, 157 Tenn. 606, 610, 12 S.W.2d 529. On the other hand, the employment appearing, the presumption is that Brademeyer was a servant. Rose & Company v. Snyder, 185 Tenn. 499, 514-515, 206 S.W. 2d 897.
With the exception of perhaps two items pressed upon us in the petition to rehear the absence of inconsistency of each of these acts with the employer  employee status so clearly established by the contract is discussed in the opinion with reference made to the authorities. That discussion need not be repeated here.
The first of the two omitted items just above referred to is that upon one occasion Peel "suggested" to Brademeyer "Why don't you use the safety belt", and Brademeyer's reply was "I would rather not use one", and the further "suggestion" *329 with reference to not working on the day he was killed that "if I were you I wouldn't work today and lay off"; that Brademeyer replied, "No, I got to wash the windows."
Since these were suggestions, and so termed in the petition, rather than commands, this circumstance has no probative force one way or the other in determining the question involved. Odom v. Sandford & Treadway, 156 Tenn. 202, 208-209, 299 S.W. 1045. Certainly the occurrence is not inconsistent with the employer-employee status established by the contract.
The second of the two omitted items is the insistence in the petition that Brademeyer was "engaged in a distinct business" of window washing. The chauffeur who operates the truck in the carrying on of his master's usual industrial business and the cook at the hotel or restaurant have independent trades. They are none the less employees within the meaning of the Workmen's Compensation Act. So that fact is without probative value.
We considered Frost v. Blue Ridge Timber Corp., supra, controlling here. Petitioners seek to distinguish that case from the case at bar on the grounds that in the Frost case (1) "the only question * * * was whether there was any material evidence to support the finding of the Trial Court", and (2) "there was evidence that the work was being done under the supervision of the defendant's inspector."
The opinion in the Frost case [158 Tenn. 18, 11 S.W.2d 861] states that "there is no material controversy in the evidence as to the facts", and, as to the inspector referred to in the petition, that his "only duty seems to have been to measure and report the quantity of lumber hauled by each man". Hence, on controlling facts paralleling those in the instant case, it became a question of law as to whether Frost was an independent contractor or an employee, and the conclusion of the Court was that "while working under such a contract Frost was an employee" within the meaning of the Workmen's Compensation Act. We do not think that any logical distinction can be drawn between the Frost case and the instant case.
The opinion in the instant case also referred to the holding in Mayberry v. Bon Air Chemical Co., 160 Tenn. 459, 464-465, 26 S.W.2d 148, 150. In determining the rights of litigants the Court must deal with actualities rather than abstract theories. In so doing, it seems impossible to take this case of window washing at 15c per window from that holding in the Mayberry case, supra, as follows: "When a party simply states to another that he will give him $1 a cord to cut wood, or 1 cent a pound to pick cotton, or fifty cents an acre to break land, the relationship thus created is that of master and servant. Such an agreement does not contemplate a relinquishment of the right to direct the work and to control the means and methods by which the desired result is attained."
In conclusion, it is proper to recall the fact that the Workmen's Compensation Act contemplated the surrender of certain common-law rights upon the part of both employer and employee. It was intended by the Act that those who sustain injuries while performing duties such as Brademeyer was performing in the carrying on of the usual business of industry shall be compensated for their injuries, rather than that such workman, his widow and children be left the objects of charity. To hold that the facts of this case constituted Brademeyer an independent contractor would be to afford the means to industry to defeat the fundamental purpose of the Act in those cases in which it is most needed, and for which it was intended. It would enable industry to enjoy the benefits while avoiding the burdens of the Act. It would be contrary to the command of the Act that it "be given an equitable construction by the courts to the end that the objects and purpose of this chapter may be realized and attained". Code, § 6901.
The petition to rehear is denied.
PREWITT, J., not participating.