WEEKS *v.* McCONNELL.

*(Nashville,* December Term, 1953.)

Opinion filed February 11, 1954.

JOHN R. GILLILAND, and CANALE, GLANKLER, LITTLE, BOONE & LOCH, all of Memphis, for plaintiff in error.

SNOWDEN, DAVIS, McCLOY, MYAR & WELLFORD, and AUVERGNE WILLIAMS, JR., all of Memphis, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Weeks, the plaintiff-in-error here, is a contractor in the business of building residences for sale. Among the acts to be done in the building of such residences is that of papering the various rooms. While McConnell was engaged under an arrangement with Weeks in papering a room in one of these houses, he received an injury that

resulted in the loss of his eye. He instituted this suit for recovery under the Workmen's Compensation Act. Weeks resisted on the theory that in the doing of this work McConnell was an independent contractor. The Circuit Judge, to use his language, "finds from the evidence in this case, which is practically undisputed, that McConnell was an employee, and not an independent contractor". From the judgment allowing recovery, Weeks has appealed and thereby presents for decision by this Court a border line question.

The business of papering the walls of rooms in residences is a skilled trade. McConnell was to be paid $1 a roll for doing this work for Weeks and furnished the tools, which were few and ordinary. He went to work and quit at such hours as he pleased with no directions from Mr. Weeks. The contract was oral. Nothing was said as to the right of Weeks to control the manner and method of doing the work, and nothing was said as to the right of Weeks to discharge McConnell at any time it might please Weeks to do so.

Weeks came around from one to several times a day while McConnell was performing the work, but at no time did he tell McConnell how to do the work, or what tools to use.

The undisputed evidence, therefore, is that Weeks did not exercise any control over McConnell as to the manner and method by which the latter should paper the walls. But it is not a question of whether control was exercised. The question is whether the right to so control existed. If so, the status of McConnell was that of a servant. *Brademeyer* v. *Chickasaw Building Co.*, 190 Tenn. 239, 229 S. W. (2d) 323.

The fact that Weeks came around from one to several times a day while McConnell was papering the

house is of no probative value in determining the question of whether McConnell was an employee or an independent contractor. *Odom* v. *Sanford & Treadway,* 156 Tenn. 202, 208-209, 299 S. W. 1045.

█ Neither social security tax nor withholding tax was deducted from the earnings of McConnell. Premium for workmen's compensation insurance on McConnell was paid. But this fact is without probative value on the question with which this case is concerned because of the explanation (undisputed) as to the circumstances under which it was paid. Weeks' idea was that where a subcontractor of his did not carry workmen's compensation on the subcontractor's men it became the obligation of Weeks to carry such insurance if he was to be protected. However, Weeks was under the impression that this risk extended likewise to a working subcontractor. (He regarded McConnell as a subcontractor). It was under this impression that he paid the insurance premium for workmen's compensation on McConnell. It was refunded to him after this accident occurred when it was made known that McConnell did his own work on this job.

On the above stated facts established by undisputed evidence the Trial Court found McConnell to be an employee rather than an independent contractor. The Court stated that in his opinion "the Brademeyer case (190 Tenn. 239, [229 S. W. (2d) 323]) is controlling on this Court."

There is at least one material difference between the instant case and that of *Brademeyer* v. *Chickasaw,* supra. In that case the work being done by Brademeyer was window washing. It was the view of this Court that window washing is unskilled labor which may be performed by any one having sufficient physical strength. It is a commonly known fact that housewives, domestic

servants and children (as in the Brademeyer case) perform that task often. The conclusion reached by this Court was, therefore, that the employment of a person to wash windows " 'does not contemplate a relinquishment of the right to direct the work and to control the means and methods by which the desired result is obtained.' " 190 Tenn. at page 255, 229 S. W. (2d) at page 329. There was no escape from this conclusion in the Brademeyer case under the authority of *Mayberry* v. *Bon Air Chemical Co.,* 160 Tenn. 459, 26 S. W. (2d) 148, holding that such employment raises the presumption that the relation between the parties is that of master and servant.

A clear statement of the reason for this conclusion of *Mayberry* v. *Bon Air Chemical Co.* appears in the text of 20 A. L. R. at page 745, viz:

"The theory upon which the courts seem to have proceeded in many cases was that in view of the humble industrial status of the persons employed, and the simple character of the work to be done, the only admissible inference was that the employers intended to retain the right to give directions in regard to the details of the work. In other words, it was considered that, although the persons employed might have been engaged in a distinct occupation or calling, in the sense that they held themselves out as being prepared to do certain kinds of work for such parties as might engage them, the relation which they bore to those parties, during the progress of such work as might be undertaken by them, was in law that of a servant."

However, this Court is unwilling to extend to cases involving a skilled trade the aforementioned rule stated

in the Mayberry case. In fact, the dictum in *Mayberry* v. *Bon Air Chemical Co.*, 160 Tenn. at page 465, 26 S. W. (2d) at page 150, is to the contrary. There it is said:

"When an unskilled person needs the services of a mechanic, such as a builder, electrician, or plumber, the employee is ordinarily treated as an independent contractor. In such a case the employer expects the employee to obtain the desired result according to his own means and methods and without control or direction from him."

But it is reasonable to think that when this Court in *Mayberry* v. *Bon Air Chemical Co.*, supra, uttered the above quoted dictum, it did not have in mind a situation where the employer had the right to terminate without cause the employment or work at any time. Such was the situation in the instant case. It was agreed that Weeks would pay McConnell $1 a roll for papering. There was no agreement that he would permit him to paper a specified number of rolls or to paper until a particular unit, such as a room or house, had been completed. Hence, Weeks did have the authority to discharge McConnell or terminate his work at any time. And both parties so regarded Weeks as having this legal right. It will be noted that in the above quoted dictum the Court uses the expression "*ordinarily* treated as an independent contractor." (Emphasis supplied.)

If the character of the work to be performed (skilled labor) in the instant case has a tendency to show that the status of McConnell was that of an independent contractor it can be said with at least equal logic that Weeks' right to terminate the work or discharge McConnell at any time has a tendency to establish the status of McConnell as that of an employee. The rule in this

state is that the legal right of an employer to terminate the employment at any time is "considered as a strong circumstance tending to show the subservience of the employee" and "that no single fact is more conclusive perhaps" that the status of the parties is that of master and servant. *Odom* v. *Sanford & Treadway*, 156 Tenn. 202, 210, 299 S. W. 1045.

On the other hand, it is the comment of the textwriter in 20 A. L. R., page 745, that with reference to the proposition that the skilled labor work is a circumstance tending to show that the relation was not that of master and servant he, the textwriter, "has not found any case in which it has been credited with a distinctly differentiating significance; and there are many instances in which it has been wholly disregarded."

This Court thinks, therefore, that it may well be concluded in the instant case that the preponderance of the evidence supports the conclusion that the relation of Weeks and McConnell was that of master and servant in this transaction. Certainly it must be concluded that the evidence does not preponderate to the contrary. That being the case, the result is the same. This is because the employment of McConnell by Weeks is admitted. Where the employment appears, the burden is upon the employer to establish that the status of the other party was that of an independent contractor if he defends upon that ground. *D. M. Rose & Co.* v. *Snyder*, 185 Tenn. 499, 514-515, 206 S. W. (2d) 897 and cases there cited. In any view of the matter Mr. Weeks has failed to carry that burden.

Subsequent to the oral arguments in, and the submission of, this case to this Court there has been submitted in behalf of Mr. Weeks an additional brief citing, and

enclosing copy of, the opinion of this Court in the unreported case of *Alley Construction Co.* v. *Nottingham* decided on November 20, 1943. It is said for Mr. Weeks that this case is conclusive authority in support of the proposition that McConnell, in his wall papering, was an independent contractor, rather than a servant of Weeks.

In the Alley Construction Company case a truck belonging to Ross Hawkins while being driven by Ed Hawkins injured the plaintiff. The material being hauled in the truck driven by Ed Hawkins was lime which had been sold to a purchaser by Alley Construction Company. This Court was of the opinion that the evidence established Hawkins as an independent contractor in that case.

Without detailing the evidence, counsel's attention is called to the fact that there was some evidence, uncontradicted, in the Alley Construction case, supra, tending to establish it as a fact that Hawkins occupied the status of an independent contractor, but there was no evidence tending to establish his status as a servant. In the case at bar there is evidence which very strongly tends to establish the status of McConnell as that of a servant. Weeks and McConnell each testified that Weeks had the authority to dismiss McConnell at any time. As this Court has heretofore said in other cases, and as it repeats hereinabove in this opinion, "no single fact is more conclusive perhaps" that the relation of the parties is that of master and servant.

For the reasons stated, the judgment will be affirmed.