CONASAUGA RIVER LUMBER COM-
PANY, Appellant,

v.

T. W. WADE, Appellee.

CONASAUGA RIVER LUMBER COM-
PANY, Appellant,

v.

Jerry WADE, by Next Friend Juanita
Wade, Appellee.

Nos. 12181, 12182.

United States Court of Appeals
Sixth Circuit.

April 21, 1955.

W. Neil Thomas, Jr., Chattanooga,
Tenn., Aubrey F. Folts, Chattanooga,

Tenn., on the brief, Folts, Brammer, Bishop & Thomas, Chattanooga, Tenn., of counsel, for appellant.

Charles Guinn, Etowah, Tenn., Frank N. Bratton, Athens, Tenn., for appellees.

Before SIMONS, Chief Judge, ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The basic question here to be decided is whether the relationship between the appellant and one Evans, with whom it had a contract for the cutting of logs upon lands owned by or leased to the appellant, was a contract of employment, making Evans the servant of the lumber company, or an independent contractor. The question became important because of injuries received by the appellees in an automobile accident in which a truck owned and driven by Evans became involved. The issue was submitted to the jury and judgments for the appellees are attacked by these appeals.

The contract between the lumber company and Evans, as written, is set forth in full in the margin.[1] It and oral modi-

1. This Agreement, made and entered into this fifth day of July, 1951, by and between the Conasauga River Lumber Company of Conasauga, Tennessee, party of the first part, and W. G. Evans of Murray County, Georgia, party of the second part,

Witnesseth:

That, whereas the party of the second part is an independent contractor, experienced in cutting and logging, and whereas the party of the first part has a certain tract of timber land including lots #236, 237, 268 and 60 acres more or less of lot #270 in the twenty-seventh district and second section of Murray County, Georgia, and whereas the party of the second part has bargained, contracted and agreed to cut and deliver lumber from these lots of land, to which the principal roads have already been constructed.

Be It Mutually Agreed As Follows:

That, for and in consideration of the sum of Thirty-six Dollars and Fifty Cents ($36.50) per thousand feet, board measure, from which sum the cost of compensation insurance is to be deducted and regularly charged to Mr. Evans, the said party of the second part agrees to cut certain sets agreed upon between the parties within the above mentioned area, converting the logs into lumber in sizes ordinarily required by the party of the first part and then delivering the lumber by truck to the yard at Conasauga, Tennessee.

The party of the second part agrees to furnish all of the necessary tools, teams, equipment, supplies, trucks and labor and the said party of the second part shall conduct this operation as a separate and distinct job, independent of any supervision by the party of the first part, other than that the lumber produced under this contract shall be merchantable and in sizes and grades acceptable to the lumber company. The party of the second part

agrees to commence cutting promptly and finish same within reasonable time estimated to require not more than six months.

It is mutually agreed that there shall be no employer-employee relationship between the party of the first and the labor or subcontractors of the party of the second part. The party of the second part agrees to meet all of the requirements of State and Federal Law including Social Security, Old Age Benefits and Wage and Hour Laws, and shall make all of the necessary reports both to State and Federal Agencies.

The party of the first part agrees, upon receipt of information to be furnished each month by the party of the second part, to pay unto its insurer such sums as may be required to cover employees and subcontractors of the second part (which must include names of employees, social security numbers, hours worked and the rate for each hour) and that the cost of said insurance shall be deducted from any and all settlements due and payable the party of the second part.

The party of the second part shall have the right to subcontract any part of this work but in so doing it is not relieved of the responsibility of *performing* each successive step in the cutting, logging, manufacturing and delivering the product of the trees. Further the employees of any subcontractors shall be tabulated and reported for the purpose of compensation insurance the same as if employed directly by the party of the second part.

It is agreed that this contract is subject to cancellation by the party of the first part upon receipt of information substantially indicating a failure by the party of the second part to comply with any and all State and Federal Laws.

It is mutually agreed that the sum of One Dollar ($1.00) per thousand may be retained out of each weekly settlement, to

fications thereof were submitted to the jury for a decision upon the status of Evans. The main argument of the appellant is that the contract, as originally entered into and as subsequently modified, is unambiguous and was with Evans as an independent contractor, relieving it of liability for the negligence of Evans, and that nothing in the subsequent acts of the parties to it changed this relationship to that of master and servant, that the question was solely one of law, with the burden of proof in this respect upon the plaintiffs. Subsidiary issues rest upon alleged errors of the court in instructing the jury, particularly in the court assigning no importance to the provisions of the contract bearing upon the relationship in its instruction, "Although the contract might say he is an independent contractor, does not make him one and does not fail to make him one", urged as being erroneous and prejudicial.

After the execution of the agreement, Evans entered upon its performance on the lumber company's property in Murray County, Georgia. He hired his own men, furnished his own tools, teams, equipment, supplies, and trucks. During bad weather of the winter of 1951–1952 it became impracticable to log this tract and Evans reported that he had ascertained that the timber rights on a McBrayer tract in Polk County, Tennessee, could be acquired. The lumber company sent its timber cruiser to inspect and approve the tract and subsequently to purchase the timber rights thereon for $820. The negotiations for the purchase were completed by telephone with the company but payment was made by a check payable to Evans who endorsed it over to McBrayer. The explanation for this was that the company did not know the full name of the owners. Evans, thereafter, transferred his operations to the McBrayer tract. While no written contract was entered into for the Tennessee

operation, the lumber company and Evans orally agreed that Evans might cut and log the tract under the terms of the original contract and then transfer his operations back to the Georgia tract, when the weather cleared. Two modifications of the written contract were agreed to. Evans was to be compensated at $40 per thousand feet of lumber instead of $36.50 on account of the longer haul from the McBrayer property. The second modification was that since there were no roads on the Tennessee property, Conasauga was to use its heavy road machinery and bulldozer, operated by its own employees, to build roads into the property. Under the original Georgia contract, the principal roads were recited as having already been constructed.

Evans entered upon the cutting and logging on the McBrayer tract and when the weather had cleared returned to the Georgia tract where he continued operations until May, 1952. While he was delivering a load of lumber from the McBrayer tract to the appellant's yard the accident involved occurred.

The evidence shows that Evans hired and fired his own employees, with no supervision from the lumber company; prescribed the hours of work for himself and his men; chose what parts of the tract were to be logged first; picked the routes to be followed in delivering the lumber; furnished all his own tools, truck and equipment, with one single exception, * * * when his power unit failed, Conasauga temporarily loaned him its unit until his own could be repaired. In compliance with the provisions of the original contract, appellant carried a workman's compensation insurance policy covering Evans' employees but the premiums thereon were charged to Evans. On a number of occasions, it paid some of Evans' employees directly, as a matter of convenience, to save Evans looking up the men

be held by the party of the first part until this contract has been satisfactorily completed, at which time this retainer shall be due and payable, and shall be paid to the party of the second part less any deductions that may be in order for failure to fulfill his contract.

at their homes. These payments were also charged to Evans' account.

The classical primary test as to whether a contractor is independent or a mere servant depends upon his right to control the manner and method in which the work he has undertaken to perform is carried on, independent of supervision and direction by his employer. This is a broadly generalized conclusion of many of the text writers, based upon the study of numerous cases, Moll Independent Contractors' & Employers' Liability, p. 43, 27 American Jurisprudence, 539, 540; 19 A.L.R. 235; 1 R.C.L., 67. The mere fact that the employer reserves the right to supervise or inspect the work during its performance does not make the contractor a mere servant, where the mode and means of performance are within the control of such contractor. While these are principles not always easy to apply in specific cases, numerous secondary tests are frequently relied upon, among them being whether the contractor is one engaged in a business requiring special skills, whether he controls the hiring and discharging of his help, provides his own equipment, and whether payment is paid by the time or by the job. 4 Schneider Workmen's Compensation Text, §§ 1065–1075. These are guideposts which may point the way to the right of control. Also of importance is whether or not there has been a written contract and, if so, whether it is free from ambiguity or fails to express the real intention of the parties. Where there is such contract, or an oral contract susceptible of but a single inference, the question is one for the court, save only where it has been modified by the practice under it.

The law of Tennessee, which is applicable to the present contract, does not differ materially from general law. In D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 514, 206 S.W.2d 897, 904, it is said: " 'This right of control is the distinguishing mark which differentiates the relation of master and servant from that of employer and independent contractor. Other factors are looked to only to aid in determining whether such right existed in a given case. * * * Wherever the defendant has had such right of control, irrespective of whether he exercised it or not, he has been held to be the responsible principal or master.' " In Odom v. Sanford & Treadway, 156 Tenn. 202, 209, 210, 299 S.W. 1045, 1047, the court said: " 'The mere fact that the employer reserves a right to supervise or inspect the work during its performance does not make the contractor a mere servant, where the mode and means of performance are within the control of such contractor. The right of the employer to go upon the premises and see that the work is being done according to the specifications of the contract does not affect the relations of the parties so as to constitute the employee a mere servant.' "

Confining our consideration, at this point, to the more significant terms of the contract, it seems clear that the primary and secondary tests point to Evans as an "independent contractor." He had been engaged in logging as a distinct business, with his own equipment and tools; he was hired for a specific job; furnished his own labor; controlled its hiring and discharge; and was paid by the job and not for his time.

There are, however, other provisions of the contract on which the appellees rely and upon which the court based decision in denying a motion for directed verdict and overruling one for a new trial. Evans agreed to meet the requirements of State and Federal Laws, including Social Security, Old Age Benefits and Wage and Hour Laws, and agreed to make all necessary reports to State and Federal agencies, and also to pay to Conasauga the cost of compensation insurance taken out by it for the benefit of Evans' employees. We find no occasion to enter upon a discussion of the terms of the Workmen's Compensation Acts of Georgia and Tennessee. Code Ga. § 114–101 et seq., Code Tenn. § 6851 et seq. Such provisions are frequently incorporated in agreements with independent contractors, perhaps in an ex-

cess of caution, perhaps in response to modern social responsibilities, perhaps with purpose of keeping the contractor in position to complete his contract without undue delay. We fail to see their bearing upon the independence of Evans in the mode and manner of his performance or to conclude that they eliminate the provisions of the contract which respond to the usual tests which point to his independence in performance. In Grace v. Louisville & Nashville Railroad Co., 19 Tenn.App. 382, 390, 89 S.W.2d 354, 359, the court said: "We do not construe the requirement of liability insurance to protect the carrier as an admission that it might be liable in such case as this. It was evidently made out of abundant caution. It is true that there are many cases holding that evidence is admissible, as to such an issue, that the alleged employer carried indemnity insurance; but only as having a tendency to negative the independence of the contract, when there was other evidence tending to show the relation of master and servant." The court in the adjoining state of Kentucky in Raponi v. Consolidation Coal Co., 224 Ky. 167, 169, 5 S.W.2d 1043, and Harris v. Stone, 256 Ky. 737, 77 S.W.2d 18, applies a similar principle. There, it was held that securing insurance for the benefit of a contractor's employees, charging him with the premiums thereon, was not of itself sufficient to create an exception to the general rule universally applied in such cases. We conclude, in respect to the contract, that it was clearly the intention of the parties that Evans was to be dealt with as an independent contractor. There is no evidence that the contract was entered into in bad faith by either party, or that it was a mere sham without purpose that it be followed, in departure from Conasauga's custom in contracting for logging operations.

So far, we have considered only the written contract and the oral modifications upon which the parties had agreed. We consider now the practice followed in its performance. Much has been made of Evans' participation in securing lumber rights in the McBrayer tract, while unable to complete his work in Georgia because of weather conditions. He looked about for other timber lands upon which he could employ his men, equipment and tools. He had no authority, express or implied, to secure rights to McBrayer. The negotiations were conducted by Dooley, president of Conasauga, and the fact that the check in payment was to him to be endorsed to McBrayer is of no importance. It has no bearing whatsoever upon his independence of control in the performance of his logging operations. He neither sought nor received any compensation for discovering the tract and if Conasauga ratified anything he did, it was for a specific and limited purpose, having nothing to do with the logging operations which are the subject matter of the contract. No importance is to be attached to the contention that no express time for completion was set for the Tennessee operation, as there was in the original contract for the Georgia work. In such cases, the law implies a reasonable time for completion. In any event, it was agreed that he would return to the Georgia lumbering as soon as the weather there had cleared. The provision in the deed from McBrayer that Conasauga should have the right to erect and operate sawmill sites is also of no importance. It was Evans who determined where the sawmill should be erected. The fact that Conasauga built access roads into the McBrayer property is irrelevant. Evans was not engaged to build roads but to conduct logging operations. To lay stress upon the fact that the employees of Evans traded at a commissary operated by an affiliated company of Conasauga would seem to be grasping at straws. The commissary was for the convenience of employees, neighbors, and pupils from nearby schools. If Conasauga made initial payments to some of Evans' employees, it was a mere matter of convenience and such payments were charged back to Evans. The cumulating of irrelevant and immaterial circumstances adds nothing to the argument that Evans was a

servant of Conasauga. The total is no more than the sum of its parts.

There are Tennessee cases which hold that the burden of proof is upon the defendant where a relation of master and servant initially appears, and the employment is for ordinary work. We do not think a presumption arises where there is a written contract pointing specifically to freedom of control, in the light of the rationalization in Mayberry v. Bon Air Chemical Co., 160 Tenn. 459, 464, 29 S.W.2d 148.

We conclude that Evans was an "independent contractor" by all the tests that are usually applied to determine that status. We find no need for considering alleged errors in the court's instructions to the jury. The court should have directed a verdict for Conasauga. The judgment against Conasauga River Lumber Company is set aside and the case remanded to the District Court with instructions to dismiss the complaint of the appellees against the lumber company.

It is so ordered.