BUSH BROTHERS and COMPANY,
Appellant,

v.

Harold HICKEY, Appellee.

No. 12329.

United States Court of Appeals
Sixth Circuit.

June 17, 1955.

S. J. Milligan, Greeneville, Tenn., Franz, McConnell & Seymour, Knoxville, Tenn., of counsel, for appellant.

J. R. Simmonds and C. T. Herndon, III, Johnson City, Tenn., Simmonds, Bowman & Herndon, Johnson City, Tenn., on brief, for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment of the District Court rendered upon a jury verdict in an action for personal injuries arising out of a collision between one Stanley Cress, a truck driver transporting a load of beans from Mountain City, Tennessee, to Chestnut Hill, Tennessee, a distance of some 54 miles, and appellee's motor car, appellee being seriously injured.

The principal question presented is whether the District Court should have sustained the motion for directed verdict on the ground that Cress was an independent contractor, for whose negligence in the operation of his truck appellant was not liable.

Cress arranged to haul the beans for appellant in an oral contract negotiated on behalf of appellant by one Dick Wagner, who regularly made arrangements of this kind on behalf of appellant, employing and paying off helpers during the season of 1953. Appellant's company hauled some 158,000 bushels of beans during this season, having three regular truckers for this purpose and other men hired to do extra hauling. Cress was one of the extras.

Appellant exercised no control over the manner of Cress's operation except that he was not permitted to use a trailer. There was no agreement between Cress and appellant to haul any specified number of beans nor loads of beans, nor to haul for any specific period.

Under the law of Tennessee where the employment exists the burden is upon the employer to establish that the status of the other party was that of an independent contractor. D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897. It is also the law of Tennessee that the question whether an employer has relinquished the right of control over work done for it is material in determining whether the status of the worker is that of independent contractor or employee. The fact that appellant exercises no control as to the manner or method by which the work is done, under Tennessee law is not determinative. It is not a question of whether control was exercised, but whether the right of control existed. Brademeyer v. Chickasaw Building Co., 190 Tenn. 239, 229 S.W.2d 323. It is also the law of Tennessee, as stated in Weeks v. McConnell, 196 Tenn. 110, 264 S.W.2d 573, that the legal right of an employer to terminate employment at any time is a strong circumstance tending to show subserviency of the employee and no single fact is more conclusive that the status of the parties is that of master and servant.

Under Tennessee law the decisive question here is not whether there was a series of contracts to haul beans. The decisive question is whether the employer had a legal right to terminate the employment at any time. Weeks v. McConnell, supra. On this point Wagner testified in answer to the question "You could quit him at any time?" "That is right." While Bush, president of the company, testified that they had no control over Cress, he refused to say that he would not fire a trucker if he came into his office drunk, or that he would not fire one that he knew was reckless on the highway. Cress stated in effect that he could have been fired at any time. This certainly includes the right to fire before the job was finished. The testimony of Cress and Wagner supported a finding that appellant's right to terminate employment included the right to fire Cress at any time. This presented a question for the jury. The burden was on appellant to prove that Cress was an independent contractor. D. M. Rose & Co. v. Snyder, supra. This burden appellant did not sustain.

The court, in a charge to which neither party excepted, left it to the jury to determine whether appellant had given up or relinquished the right of control over the work done for it by Cress and the jury evidently found that appellant could have terminated the services of Cress at any time and for any reason.

Conasauga River Lumber Co. v. Wade, 6 Cir., 221 F.2d 312, involved a written contract which established the status of an independent contractor for the driver of the truck involved in the accident. The written contract was made applicable to the later oral contract between the parties. The case is sharply distinguishable on the facts and not controlling here. In Terry v. Memphis Stone & Gravel Co., 6 Cir., 222 F.2d 652, the question whether the owner of the truck alleged to have caused the injuries complained of was an independent contractor was submitted to the jury with a full charge upon the question given by the court. The jury found that the owner of the truck was an independent contractor, for its verdict was in favor of the defendant. In the instant case the court submitted to the jury the question whether Cress was an independent contractor. The jury found that he was not, for its verdict was for the plaintiff. We conclude that the Terry case has no bearing here.

Since the verdict of the jury is supported by substantial evidence and no reversible error appears in the record, the judgment of the District Court is affirmed.

SHACKELFORD MILLER, Circuit Judge (dissenting).

I do not agree with the conclusion of my colleagues that the appellant could have terminated the services of the truck driver at any time for any reason.

Each contract of hauling was a separate transaction, usually separated by intervals of time. Although there was no obligation on the part of the appellant to enter into another contract after the completion of a prior one, there was no right to terminate a contract for a specific job of hauling before the completion of the job. The evidence on this phase of the case appears to me conclusive.

Cress, the truck driver, testified as follows:

"Q. Did you have any pre-arrangements with him to haul beans for him on the 19th? A. I went out that morning and he asked me, or I asked him did he have any beans for me to haul that day, and he said he didn't know, that he would find out in a few minutes, and so he come back in a few minutes and told me that he had a load of beans in the field and if I wanted to, I could go pick them up.

"Q. What were the circumstances under which you would haul beans. Would you go to Mr. Wagner and ask him to haul beans or would he come to you? A. I would go to him.

"Q. Was that the situation existing all the time you were hauling beans for him? A. Yes, sir.

* * * * * *

"Q. When that hauling was over did your contract continue or was that the end of it? A. Well, we always asked him about every morning did he have any to haul.

"Q. Listen to the question. After you had performed your mission on that particular contract, did you have any further contract with him? A. No. sir.

"Q. Did you renegotiate a new contract the next day or the next time you went?

"Mr. Simmonds: Object to that, if the Court please.

"The Court: He may answer. State the facts.

"Q. (By Mr. Milligan) Did you make another contract the next time you went out for him? A. Yes, sir.

* * * * * *

"Q. Some of those weeks you didn't haul any? A. Some weeks I didn't haul any.

"Q. Would you have been in a position to haul if you had a contract? A. Yes, sir, I was ready to haul.

"Q. And the only reason you didn't haul was that he didn't con-

tract with you, is that right? A. That is right."

Mr. Wagner, appellant's broker, testified with reference to the employment of Cress that if he needed a truck he would ask Cress or anybody else who was hauling if he could take a load of beans and that it was always understood with the truckers that he would pay them 10 cents a bushel. He answered certain questions as follows:

"Q. When you needed him, you would ask him to take them? A. Yes.

"Q. That constituted the entire arrangement between the two of you? A. That is right.

"Q. You had no obligation to hire him over the whole season? A. No.

"Q. You could quit him at any time? A. That is right."

Mr. Fred C. Bush, President of the appellant, when questioned about how he would handle a trucker who was drunk or was driving recklessly on the highway stated, "I wouldn't want a fellow like that hauling for us," and in explanation of the statement gave the following testimony:

"Q. (By Mr. Simmonds) Go ahead and answer the question. I say you would either fire or tell Mr. Wagner to fire one of these haulers that you knew was driving recklessly on the highway, wouldn't you? A. I would just tell him not to contract with him to haul any more.

"Q. Not to contract with him any more. In other words, you would discontinue using his service? A. That is right, after he had completed his contract we would terminate it."

The appellant did not supply the truck, the driver, the oil or gas, neither exercised or retained any control over how the hauling was to be done, and paid for such hauling by the job. With respect to the appellant's control over him, Cress, the driver, testified as follows:

"Q. Do you know any of them? A. No, sir.

"Q. You just knew where the plant was located? A. That is right.

"Q. You took the beans down there and unloaded them. A. Yes.

"Q. Who told you what way to go. A. Nobody.

*    *    *    *    *    *

"Q. Would anybody have a right to tell you what way to go? A. No, sir.

"Q. Could you have gone around by Erwin or any other way you wanted to? A. Yes, sir, could have went any way."

With reference to any control by Wagner on the day of the accident, both before and after he reached the place where the accident occurred, he testified:

"Q. Did he have any right to control your operation? A. No, sir.

"Q. Did he attempt to control your operation of your truck? A. No, sir.

"Q. Before you reached that point did he have any right or exercise any right to control your operation? A. No, sir.

"Q. After you left that point did he have any right to control or exercise any right to control over your operation? A. No, sir.

"Q. Your sole purpose as far as he was concerned was to get beans from Johnson County down to Chestnut Hill in Jefferson County, is that right? A. Yes, sir."

Mr. Wagner testified that he did not prescribe the route which Cress was to take, nor fix the time he was to leave or arrive at his destination or the time by which the truck was to be unloaded. He gave specific answers as follows:

"Q. Did you have any control over the manner or means by which Mr. Cress carried out his contract? A. No, sir. I loaded the beans and

told him to take it to Bush's, that is all I had any control over.

"Q. Any method that he used in getting them there was his responsibility? A. That is right."

On this same issue, Mr. Bush testified as follows:

"Q. Do you know what kind of arrangement he has about getting beans from the Mountain City market down to your plant? A. Yes, they are hauled by independent truckers.

"Q. How are they compensated? A. They are paid 10 cents a bushel.

\*    \*    \*    \*    \*    \*

"Q. Do you have any right to exercise any control over these independent truckers by the methods and means they bring the beans from the market to your plant? A. All we require is that they be delivered in a short period of time.

"Q. Answer my question for the purpose of the record Mr. Bush. The question is this: "Do you have any right to exercise any control over these truckers as to the methods or means by which they bring beans to your plant? A. No, I would say not.

"Q. I say do you exercise any? A. No.

"Q. Are you interested in anything other than the end result? A. No, that is all we are interested in."

Based on the foregoing evidence relating to the crucial issues in this case, I am of the opinion that appellant's motion for a directed verdict should have been sustained. Comasauga River Lumber Co. v. Wade, 6 Cir., 221 F.2d 312; Terry v. Memphis Stone & Gravel Co., 6 Cir., 222 F.2d 652.