WILLIAM F. SEALS

*v.*

DOMINICO ZOLLO, Individually and D/B/A DIAMOND ICE CREAM Co., et al.

(*Nashville,* December Term, 1958.)

Opinion filed July 27, 1959.

Rehearing denied September 3, 1959.

BUCHIGNANI & GREENER, Memphis, for appellant.

NEELY & GREEN, Memphis, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a workmen's compensation case wherein the trial judge found against the petitioner on the ground that he was not an employee of the defendant. An appeal was seasonably prayed and granted to this Court.

At the time of the alleged injury herein the petitioner was an ice cream peddler selling at retail products manufactured by the defendant company. On June 8, 1957, while pushing an ice cream cart on the streets of Memphis the petitioner was run into by an automobile and injured. He is a 66 year old unskilled man who has been peddling the defendant's products in pushing one of its carts for four years prior to the accident.

The petitioner ordinarily worked about eight months out of the year and earned around $30 to $35 per week; no training was required in reference to the job; the company carries workmen's compensation insurance on its employees with the United States Fidelity & Guaranty Company, but it is not shown whether or not the petitioner was included in the employees listed with the insurance carrier.

The company owned the refrigerated ice cream cart which the petitioner was using and did use in his work. The name of the defendant ice cream company was shown on the cart as was other advertising of the company's products. It provided the petitioner with a bell and provided dry ice to be used in the cart to keep its products refrigerated. Each day the petitioner picked up the cart at the plant of the company in the morning and returned it to the plant at the end of the day. The company owned thirty or more of such carts.

The company had a group of peddlers, including certain peddlers it called "school children" who were high-school students over 16 years of age and who operated on the same basis as did the petitioner.

The petitioner's basis of operation with the company was that every morning he would pick up merchandise for sale and would be given a ticket for the same but would not pay for the products at that time. He would go out and sell his merchandise and would pay that night the wholesale price for what he had sold and turn over the unsold merchandise which would be put in a box labeled with his name on it, and for which he was given credit, but he would take out on the next day the unsold items from the previous day. He checked in and out

every day, but there was no definite time by which the petitioner had to check in in the morning yet it was generally understood that the company wanted its peddlers to start out between 7:00 and 8:00 o'clock in the morning. He was instructed to check in every night by closing time.

We think the foregoing method of doing business was a matter of bookkeeping and did not involve title to the unsold products. In other words there was no vesting of title in the petitioner until the ice cream was sold.

During the first two years on this job the company routed him. After these first two years he would go wherever he wanted to but he did have a definite route and the company knew generally where he was and was thus able to find him when necessary, but at the time of the accident the company did not instruct him as to a definite route.

From time to time the company would send out a man to either fix the cart which the petitioner was using, if it was broken down, or to bring more ice cream or other products of the company if the petitioner had sold out at the time. When the company would send out new ice cream to the petitioner, he was required to pay cash at the time he received these additional products.

The company from time to time brought out new products which all peddlers carried. It suggested the retail selling price for all of its products. The petitioner and other peddlers of the company were not permitted to carry products other than that of the defendant company.

On occasions an official of the company talked to the peddlers as a group. These peddlers, including the petitioner, were told not to drink on the job, and several

men were caught drinking and their relationship with the company terminated.

When peddlers were found drinking on the job, or were guilty of disorderly conduct, such as fighting, the officials would go out and get the cart and the unsold ice cream. The proof of the company showed that they felt that the ice cream once taken out belonged to the peddler. But the unsold products that was turned in by the petitioner at closing time each day belonged to the company until it was sold on the following day.

The company told certain of the peddlers that they were not selling enough and terminated their relationship if and when they did not sell what the company thought they should sell. The company enforced city health regulations and each peddler had a health card and was required to be neat and clean on the job. The company established safety regulations requiring the peddlers to push the carts as near the curb as possible. It likewise gave instructions that no dry ice was to be given away. If peddlers were late in starting the day, they were told to get in earlier.

There was no withholding tax or social security tax deducted, and each peddler had a separate license. For the time that Mr. Seals was associated with this company his income was verified to the Memphis Housing Authority, and the same was true with reference to other peddlers. In making application to the Housing Authority Mr. Seals stated that he was self-employed. Only persons in low income brackets were permitted rental space by the Authority.

The company's usual credit terms to ordinary customers was a month. The credit to the petitioner and those

in his position was from morning until night on the same day. It is testified by the company's witnesses that they considered school children hereinabove referred to as "independent business men", the same as other customers, and that they likewise so considered the petitioner and other peddlers. The *feeling* by the company officials that the peddled ice cream *belonged to the peddlers,* and that they were each considered as independent contractors, while not objected to it cannot be considered otherwise than as a self-serving statement.

The ice cream was ticketed to the peddlers at the wholesale price, and the sales tax charged thereon.

The petitioner and other peddlers were required to check in every night and if they failed to do so the company would go out and get them. The company did this, according to their testimony, in order that the peddler would not "beat them out of a bill".

It is very ably and forcefully argued that there is ample material evidence to support the finding of the trial judge that the petitioner was not an employee and that the trial judge having thus found this Court is bound thereby.

■ The statement above, that is the factual situation as to the relationship of the parties, is practically without conflict. This being true we think the question relating to this contractural relationship is solely one of law. *King v. Buckeye Cotton Oil Co.,* 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086; *Moore v. Cincinnati, N. O. & T. P. R. Co.,* 148 Tenn. 561, 256 S.W. 876.

The term "employee" is defined by our statute (section 50-902, T.C.A.), as follows:

470

> " 'Employee' shall include every person, including a minor, in the service of an employer, as 'employer' is defined in paragraph (a) above, under any contract of hire, apprenticeship, *written or implied.*" (Emphasis ours.)

■ Thus it is that a contract of employment may be implied from the conduct of the parties and the undisputed facts disclosing their business relationship.

"There is no absolute formula whereby it can be determined whether workmen's compensation claimant is an employee or an independent contractor, but facts of each particular case must be taken into consideration and a determination must be made from such facts". *Barker v. Curtis,* 199 Tenn. 413, 287 S.W.2d 43. In this same case the Court adheres to the following generally accepted rule:

> "In determining whether or not claimant in workmen's compensation proceeding was an employee or independent contractor, the Supreme Court has duty to give Workmen's Compensation Act a liberal construction in favor of fact that claimant is an employee, rather than a strict construction".

But the counsel for the defendant earnestly contends that under the undisputed facts as stated herein there existed no contract or employment either express or implied. There can be no gainsaying that this petitioner is either an employee of the defendant or a person engaged in a business of his own, i. e. a merchant or "peddler" who is retailing products purchased from a favorite supplier, and by so doing is not subject to anybody's control, especially the defendant's.

Whether the petitioner was an employee or an independent contractor depends upon the nature of the defendant's business, the way it was conducted, and the petitioner's relationship to that business. Primarily we must consider if the defendant exercised some measure of control over the petitioner in dispensing ice cream at retail. Not that it was exercised at all times and in every particular instance, but did the right to control exist? *Weeks v. McConnell,* 196 Tenn. 110, 264 S.W.2d 573; *Brademeyer v. Chickasaw Bldg. Co.,* 190 Tenn. 239, 229 S.W.2d 323. The fact that neither social security tax nor withholding tax was deducted is not a controlling factor. *Weeks v. McConnell,* supra.

The right of the company to terminate the contract at will is a strong circumstance tending to show subservience of the employee. *Weeks v. McConnell,* supra; *Kamarad v. Parkes,* 201 Tenn. 566, 300 S.W.2d 922. The question of control and direction is further accentuated by the retention of control over the product until it is sold, and also that of continued title and control over the pushcart which was essential to the company's business. Moreover the method of payment for services supposed to be rendered by the claimant is not conclusive of the question. *Finley v. Keisling,* 151 Tenn. 464, 270 S.W. 629.

Regarding the petitioner's income tax payments, it appears that forms (returns for tax purposes) were made out for him by the defendant. His income was, as follows: for 1954, $500; for 1955, $800; for 1956, $700; and for 1957, $150. The foregoing evidence is immaterial in deciding the conditions of petitioner's relations to the defendant's business.

One of the strongest arguments made in support of the defendant's contention that petitioner was an independent contractor is shown by his statement, above mentioned, that he was "self-employed". But this cannot be accepted as true as a matter of law because the evidence is directly to the contrary. The petitioner could not, and did not, earn anything solely by his own efforts. For a period of four years the defendant had furnished him with the equipment (a pushcart and attachments) without which he could not have earned a dollar, or rendered any service whatever to defendant in the sale and distribution of its products.

We have no case in this State dealing with the exact question now under consideration.

■ It is conceded that in the absence of some evidence showing a business relationship, or contract of employment, either express or implied, there is no right of recovery under our Workmen's Compensation Statute. Our cases are all to this effect and they need not be cited. But when a business relationship is shown to exist then the burden is upon the employer to prove that the claimant is an independent contractor rather than an employee. *Sledge v. Hunt,* 157 Tenn. 606, 12 S.W.2d 529.

■ The learned trial judge rested his decision on the theory that it is part of the political history of this State that "peddlers" were regarded as being engaged in an independent occupation and liable for a "peddlers' tax". The case cited in his memorandum opinion, *Garcia v. Vix Ice Cream Company,* Mo.App., 147 S.W.2d 141, supports his ruling to the effect that petitioner is not an employee, and that the relationship between the parties is really that of "vendor and purchaser". But we think the trial

judge unwittingly overlooked a factual situation which shows a right of control and direction of petitioner by the defendant, and which was necessary to the successful management of its business.

The right of ''peddlers'' and similar occupations to recover compensation under workmen's compensation statutes is reviewed in Vol. 1, Section 44.34, Larson's work on this subject. The author makes specific reference to cases where claimants are adjudged to be an employee and an independent contractor. It is said:

''When the employer furnishes valuable equipment, the relationship is almost invariably that of employment. When the employee furnishes such equipment, this circumstance may, if coupled with other factors, indicate independent contratorship, but in itself it is not necessarily fatal to a showing of employment based on other grounds.''

Another strong statement, applicable to the situation in the case at bar, appears in Section 45.23, as follows:

''Just as the employer may buy his raw materials outright from an independent business man, so he can distribute his product by turning it over completely to a jobber who is an independent business man. But, since disposition of the product is normally an inherent part of any business, there is an increasing tendency to indulge a strong presumption that salesmen, distributors and deliverymen who fall short of the status of business men holding themselves out to the public as such are employees. The circumstance that the salesman is devoting his entire time to the distribution of the one employer's product is, in most lines, an indication that he is an employee.''

The foregoing finds support in *Florio v. Assael,* 274 App.Div. 1082, 85 N.Y.S.2d 624 and many other cases cited in the footnotes. It is on "all-fours" with the facts in the case at bar with one or two unimportant exceptions. Under some decisions relating to the relationship of master and servant the petitioner herein might well be thought of as a buyer of products and the defendant as a seller. But viewing the facts of this case, under our Workmen's Compensation Statute, we think it is not unreasonable for us to hold that he was an employee. For four years he had pursued his present occupation, that is, he was furnished products to sell at retail. These products were returned to the owner at the close of every day, if unsold. If sold the peddler paid the company the wholesale price and retained his pay, i. e. the difference between the wholesale price and the retail price. The defendant contends that this was "his profit". We hold that it was compensation for services in the sale and distribution of the merchandise. *Buettner v. Polar Bar Ice Cream Co.,* La.App., 17 So.2d 486; *Samson v. Borden Company,* La.App., 92 So.2d 152; and *Florio v. Assael,* supra.

We have here a positive element of control by the company in that it could go to the point where a peddler was selling ice cream and seize their products and the equipment, and thus without cause terminate the contract. The company at no time lost control, either of its product or the pushcart which the petitioner used in the furtherance of the company's business.

In "peddlers' compensation cases" from other jurisdictions where the company is shown to have exercised a measure of supervision and control over the claimant,

the courts have held that the practice of buying the product at wholesale and dispensing it at retail is not inconsistent with the peddlers' rights under compensation statutes. In other words, he is regarded as an employee even though in some respects he seems to be a "buyer and a seller" of the company's products. The basis upon which these decisions rest is that, while the employer's rights are duly respected and protected, the peddler's right to compensation for injuries sustained cannot be swept away upon technical grounds tending to show a buyer and seller relationship.

The mechanics of a business relationship, sometimes designed by an employer solely for his own protection, cannot be permitted to override the provisions of compensation statutes, such statutes being enacted for the protection of workers and their dependents. We must look to the factual situation in every case to determine employee and employer relationship.

In addition to the foregoing cited authority, see *Cassidy v. Peters,* 50 Wash.2d 115, 309 P.2d 767, where the refrigerated equipment was controlled by the company, yet the remuneration of the peddler was the difference between the wholesale and the retail price of the ice cream. *Jack and Jill Inc. v. Tone,* 126 Conn. 114, 9 A.2d 497, the plaintiff (peddler of ice cream) was required to sign a contract referring to himself as "a purchaser". His remuneration was the difference between wholesale and retail price. *South Bend Fish Corp. v. Employment Security Division,* 116 Ind.App. 348, 63 N.E.2d 301; the relationship was similar to that of the case at bar. *Schomp v. Fuller Brush Co.,* 124 N.J.L. 487, 12 A.2d 702; while the agreement had the aspects of a vendor and

vendee arrangement, it was held that the dealer was an employee, "though by mechanics of the agreement control seemed remote." The same effect is *Creameries of America, Inc. v. Industrial Commission*, 98 Utah 571, 102 P.2d 300; see also *Cooper v. Colonial Ice Co.*, 230 N.C. 43, 51 S.E.2d 889, where the peddler salesman purchased his truck from the company (but had not paid for it) sold ice at $1.80 per block and purchased it at $1.20, held to be an employee and entitled to compensation. *Garcia v. Vix Ice Cream Company*, supra, relied on by the trial judge is to the contrary.

There are many other "buyer and seller" types of cases found in compensation decisions involving different factual situations, such as "news-boy" relationship to a publisher. There is a diversity of opinion in these "news-boy" cases. A news-boy who sells papers for a single publisher upon a public street is generally not covered by Workmen's Compensation Statutes. Those who deliver papers on fixed routes are held to be employees. Larson's treaties; *Balinski v. Press Publishing Co.*, 118 Pa.Super. 89, 179 A. 897; *Elder v. Aetna Casualty & Surety Co.*, 149 Tex. 620, 236 S.W.2d 611. While these decisions have excited our interest they are not controlling here.

The assignment of error is sustained, and the case remanded for further proceedings consistent with this opinion.

## On Petition to Rehear

In response to a petition to rehear, filed on behalf of appellees, it must be denied because no additional authority is cited and no new argument is made upon the

determinative issue. The petition thus fails to comply with Rule 32 of this Court.

However, out of deference to the laudable zeal and sincerity of able counsel for appellees, we are constrained to respond to the contention that Mr. Seals' connection with the defendant ice cream company was that of "buyer and seller" and that the case at bar should not be decided upon the rule of law applicable to "employer and independent contractor relationship." We respectfully decline to follow this technical argument in support of petitioners' insistence of non-liability. Moreover, we dealt at length with the determinative issue in the original opinion in the following brief statement, "There can be no gainsaying that this petitioner (Seals) is either an employee of the defendant, or a person engaged in a business of his own".

A casual examination of the opinion shows that careful consideration was given to "buyer and seller" type of cases. While it is erroneously said that they had no application to the case at bar, we rested our decision in a large part upon peddler type of cases.

Considering the facts as to the manner and form of doing business the decisions turn almost entirely upon the issue of control by the alleged employer of the claimants, i. e. the peddlers who were connected with the business.

Where the question is doubtful as to whether or not a claimant is an employee or is doing business solely on his own account, it must be resolved in favor of the claimant. *Kamarad v. Parkes*, 201 Tenn. 566, 300 S.W.2d 922.

The petition to rehear is denied.