FILED
Dec 08, 2022
01:56 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **MARCOS SOSA MARTINEZ,** | ) | **Docket No. 2021-06-0071** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 80044-2021** |
| **HALLORAN INVESTMENT** | ) | |
| **PROPERTIES, LLC,** | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |

_____

## EXPEDITED HEARING ORDER
_____

During a November 15, 2022 expedited hearing, Mr. Sosa Martinez requested medical treatment, reimbursement of past medical expenses, and temporary disability benefits for a severe spine infection and a right-wrist fracture that he alleged occurred from lifting heavy rocks. Halloran argued that it is not Mr. Sosa Martinez's employer, and even if it were, his injury is not work-related. For the reasons below, the Court holds Mr. Sosa Martinez is unlikely to prevail at a final hearing in proving Halloran was his employer or that he suffered a work injury.

### Claim History

Mr. Sosa Martinez, a mason, visited an emergency room shortly before Thanksgiving 2020 with a spine so grievously infected that he had sepsis, paralysis, and required emergency surgery. He was "admitted with cervical epidural abscess, lumbar epidural abscess, vertebral osteomyelitis [at] multiple levels[,] including lower thoracic, cervical[,] and lumbar spine, [and] prevertebral phlegmon/abscess leading to quadriplegia." Spoken plainly, his entire spine was severely infected, he could not walk, and his arms were becoming paralyzed, too. An emergency-room neurosurgeon triply emphasized the grave condition of his spine at the time of his admission by writing, "This is a very complex and complicated case!!!"

Mr. Sosa- Martinez's testimony and medical records depicted a harrowing, months-long hospitalization: alone without family, unable to walk, and unable to talk to medical staff without an interpreter. A nurse wrote, "Pt is not aware of extent of his disease, and

1

was just asking when will he be able to walk again so that he can go back to his life[.]" Mr. Sosa Martinez recalled being told that he would never walk again and said he still cannot stand for more than two hours.

An affidavit from Florida physician Dr. Heather Cappello provided some context for Mr. Sosa Martinez's emergency-room condition. She wrote that his medical records show "bacteremia as a result of a hematogenous infection[.]" Apparently, "[b]loodborne organisms that pass through the vertebral spine can cause a spontaneous infection, due to the adult spine[']s high volume blood flow." Essentially, "[his condition] did not originate from heavy lifting[.]"

When his paralysis worsened while in the emergency room to include his arms, the medical records show a neurosurgeon "performed posterior cervical decompression and fusion as well as lumbar decompression and fusion."

Mr. Sosa Martinez believed he injured himself on August 26, 2020, while lifting heavy rocks at a Halloran jobsite. He testified he moved large rocks that day, which had previously been moved by heavy machinery. Halfway through the job, he claimed something happened in his body, causing intense pain in his back.

Hospital staff recorded those concerns but also recorded his report of a lung infection or pneumonia; one record read that the lung infection occurred "three weeks" before, while another posited, "three months ago." A culture taken from his spine showed evidence of "staphylococcus aureus MSSA," a type of bacteria.

The respiratory illness Mr. Sosa Martinez reported to staff occurred nearly three months before his emergency hospitalization. Mr. Halloran, who owns Halloran Investment Properties, testified that he saw Mr. Sosa Martinez suffering with a respiratory illness the week of September 3, 2020. He said Mr. Sosa Martinez was laying brick or stone for a mailbox and "looked very bad" from suspected Covid-19, so Mr. Halloran asked him to leave the jobsite. He noticed no signs of musculoskeletal injuries that day, nor did Mr. Sosa Martinez complain of any.

Roughly a week later, Mr. Sosa Martinez visited a clinic and underwent chest x-rays because of his shortness of breath, fatigue, chills, and cough with evidence of viral pneumonia in his lungs. He did not have Covid. A week after that, an x-ray of his right wrist showed a "[c]hronic scaphoid fracture with nonunion."

Mr. Sosa Martinez returned to a Halloran jobsite shortly after he tested negative for Covid. At the site, he complained to "Juan," whom he identified as a foreman, about injuries to his right wrist and back from lifting heavy rocks.

Mr. Halloran characterized Juan's role differently, saying Juan is a carpentry contractor whom he relied on heavily for Spanish interpretation. Mr. Sosa Martinez acknowledged he never told Mr. Halloran directly about his injuries because Mr. Halloran does not speak Spanish, so communication always went through Juan.

Mr. Halloran testified that his company is a property investment business with no employees and that Mr. Sosa Martinez worked as his masonry contractor, paid hourly for his work, who was free to take on other jobs but needed to timely complete his work for Halloran. As support for that assertion, he submitted Mr. Sosa Martinez's 1099 forms from 2017 through 2020. The reports showed his income varied substantially from year to year. Mr. Halloran also said he provided no tools for Mr. Sosa Martinez except for large ones, such as a cement or mortar mixer, when needed for the job. Further, Mr. Sosa Martinez could hire his own helpers and did. To prove this, Mr. Halloran provided a check stub made out to Mr. Sosa Martinez to pay for a helper Mr. Sosa Martinez hired for a job. Finally, Mr. Halloran said he could not have told Mr. Sosa Martinez how to do the masonry work because he did not know how to do it himself.

Conversely, Mr. Sosa Martinez maintained that he was an employee of Halloran, worked there for many years, and that Mr. Halloran supplied his co-workers and his tools, and also told him when, where, and for whom to work.

### Findings of Fact and Conclusions of Law

*Halloran's Motions*

At trial, Halloran requested dismissal under Tennessee Rule of Civil Procedure 37.04(3) because Mr. Sosa Martinez had failed to timely respond to its request for production of documents served on September 27, 2022. The Court declined to dismiss the claim, but as sanction, limited any proof from Mr. Sosa Martinez that was responsive to Halloran's production request, except for proof that Halloran already possessed or that Mr. Sosa Martinez had already provided with his hearing request. Tenn. R. Civ. P. 37.02(B).

Halloran also moved for involuntary dismissal at the close of Mr. Sosa Martinez's proof under Tennessee Rule of Civil Procedure 41.02(2). However, the Court denied that motion because dismissal on those grounds operates as an ultimate adjudication on the merits, which is not allowed at an expedited hearing. Tenn. R. Civ. P. 41.02(3).

*The Employment Relationship*

Here, Mr. Sosa Martinez must present sufficient evidence that he would likely prevail at a final hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27,

2015).  He failed to do so for two reasons.  First, Mr. Sosa Martinez failed to show he was a Halloran employee.  Second, even if he were, he failed to show he suffered a work-related injury.

Concerning whether Mr. Sosa Martinez worked for Mr. Halloran, the Workers' Compensation Law defines "employee" to include "every person . . . in the service of an employer . . . under any contract of hire or apprenticeship, written or implied[.]"  Tenn. Code Ann. § 50-6-102(12)(A) (2020).  An employee does not, however, include a "independent" or "subcontractor."  *Id*. at 50-6-102(12)(D)(i).

Whether the worker is an employee or subcontractor depends on the nature of the business, the way it is conducted, and the worker's relationship to that business.  *See Seals v. Zollo*, 327 S.W.2d 41 (Tenn. 1959).  When in question, the worker claiming an employment relationship exists bears the burden of proof, to be determined by considering the following factors:

(*a*)  The right to control the conduct of the work;
(*b*)  The right of termination;
(*c*)  The method of payment;
(*d*)  The freedom to select and hire helpers;
(*e*)  The furnishing of tools and equipment;
(*f*)  Self-scheduling of working hours; and
(*g*)  The freedom to offer services to other entities[.]

*Id*. at § 50-6-102(12)(D)(i).  The Court finds factors *a*, *c*, *d*, *e*, and *g* show that Mr. Sosa Martinez was a subcontractor, while only factor *f* suggested employment by Halloran.

The proof showed Mr. Sosa Martinez had control over the conduct of the work, as he was an expert in masonry and not supervised or instructed by anyone on how to do it. Next, while Mr. Sosa Martinez was paid by the hour and worked many hours for Halloran, the 1099 forms from 2017 to 2020 showed wide swings in the amount he was paid each year, which suggested non-regular employment.  The proof showed Mr. Sosa Martinez was free to, and did, hire helpers to assist him and paid them personally.  Mr. Sosa Martinez also provided his own tools with exception of large ones, which does not seem unusual for the construction business.  Lastly, Mr. Halloran said Mr. Sosa Martinez could take on other jobs if he wished, and the Court finds this testimony credible in light of the variance in income amounts Halloran paid to Mr. Sosa Martinez over the years.

The only factor in Mr. Sosa Martinez's favor, the scheduling of work hours, showed that he was expected at the jobsite at a certain time on the days he worked on a Halloran project.

When considering all the factors, the Court holds Mr. Sosa Martinez is unlikely to prove he was a Halloran employee at a final hearing.

*The Alleged Work Injury*

Even if he were an employee, Mr. Sosa Martinez must still prove medical causation to prevail at a final hearing, which requires an expert's testimony to a "reasonable degree of medical certainty" that the employment "contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C) (2022).

Based on medical records and Dr. Cappello's affidavit, the Court finds that Mr. Sosa Martinez survived an infection. While Mr. Sosa Martinez believes his infection logically resulted from his accident, he offered no medical proof of this fact. A judge cannot determine the cause without expert medical opinion explaining how the infection was primarily work-related. Therefore, he is unlikely to prevail in proving a work-related injury at trial.

**IT IS ORDERED** as follows:

1. The Court denies Mr. Sosa Martinez's requested relief at this time.

2. The Court sets this claim for **a scheduling hearing on February 6, 2023, at 9:30 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED December 8, 2022.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# **APPENDIX**

Exhibits

1. Medical records filed with Mr. Sosa Martinez's hearing request
2. Affidavit of Mr. Sosa Martinez
3. Uninsured Employers Fund Report dated May 5, 2021
4. Paycheck stubs of Mr. Sosa Martinez
5. Photograph of Mr. Sosa Martinez at the hospital
6. Letter from Workers' Dignity dated December 29, 2020
7. Mr. Sosa Martinez's Petition for Benefit Determination
8. Mr. Sosa Martinez's 1099 Forms for 2017-2020
9. Paystubs of Mr. Sosa Martinez dated June 25, 2020; July 16, 2020; July 30, 2020; August 27, 2020; and September 3, 2020
10. Rule 72 Declaration of Benjamin Edwards
11. Medical records filed by Employer
12. Affidavit of Dr. Heather Cappello

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order to Show Cause
4. Request for Scheduling Hearing
5. Request for Expedited Hearing
6. Order Setting Status Conference entered October 20, 2021
7. Motion to Withdraw
8. Order Granting Withdrawal January 10, 2022
9. Order Setting Status Conference entered January 11, 2022
10. Order Setting Status Conference entered March 14, 2022
11. Order Setting Status Conference entered April 19, 2022
12. Order Setting Status Conference entered June 22, 2022
13. Order Setting Status Conference entered July 6, 2022
14. Motion for Summary Judgment filed September 9, 2022
15. Order Setting Status Conference entered September 15, 2022
16. Agreed Order of Substitution of Counsel
17. Order Setting Expedited Hearing entered September 20, 2022
18. Employer's Pretrial Brief
19. Employer's Motion for Dismissal filed November 1, 2022

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 8, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Marcos Sosa Martinez, Employee | | | X | Mmartinez5708894@gmail.com |
| John Lewis, Employer's Attorney | | | X | john@johnlewisattorney.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

        If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*