**FILED**
**May 30, 2023**
**01:35 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Sergio Lopez,** | ) | **Docket No. 2022-06-2017** |
| **Claimant,** | ) | |
| **v.** | ) | |
| **Bud Archie Painting/N&S Cleaning,** | ) | **State File No. 801209-2022** |
| **Respondent,** | ) | |
| **And** | ) | |
| **Selective Ins. Co. of America,** | ) | **Judge Kenneth M. Switzer** |
| **Respondent.** | ) | |

---

### EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Sergio Lopez and William "Bud" Archie have worked on construction projects together since 2009. The issue is whether they had an employment relationship, or whether Mr. Lopez is an independent contractor for Bud Archie Painting. The Court held an expedited hearing on May 24, 2023, and finds Mr. Lopez is likely to prevail at a hearing on the merits that he was an employee. His request for workers' compensation benefits is partially granted.

### Claim History

Mr. Lopez seeks payment of past medical bills and temporary disability benefits from a September 20, 2022 work injury that resulted in injuries to his head, hand, and wrist. He underwent wrist surgery immediately after the accident, as confirmed by emergency room records. The records document his treatment and that he reported being injured in a fall at work, but they do not contain a statement from a physician relating the injury and treatment to his work. Mr. Lopez previously filed copies of bills for the treatment, which were not marked as an exhibit at the hearing.[1]

---

[1] The bills were excluded from evidence because they did not meet the requirements of Tennessee Compilation Rules and Regulations 0800-02-21-.16(2)(b) (February, 2022) (medical bills are self-authenticating and admissible when signed by a physician or accompanied by a form signed by a medical provider or records custodian certifying that the bills are true and accurate); *and see Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 53, at *8-9 (Sept. 14, 2018) (medical bills must be accompanied by

Bud Archie Painting denied the claim, asserting that Mr. Lopez is an independent contractor not an employee.

Mr. Lopez testified that he started working for Mr. Archie in 2009. He said that Mr. Archie viewed him as the "leader" among the workers, because Mr. Lopez would interpret and convey information between the crew and Mr. Archie. Over the years, Mr. Lopez started doing more than painting for Mr. Archie, such as installing security cameras. He said he considered him family.

Mr. Lopez earned a weekly salary of $1,200. He was paid by check, and no taxes were withheld. Mr. Lopez said he worked Mondays through Fridays from 7:30 a.m. until 4:00 p.m. When he or another worker were running late or needed to leave early, Mr. Lopez said they had to get permission from Mr. Archie. Mr. Lopez offered text messages from several conversations to bolster this testimony.[2] For example, on April 27, Mr. Lopez wrote, "I'm running 5 min . Late," and Mr. Archie responded in part, "thank you for letting me know[.]"

Mr. Archie was not onsite all day but usually came by in the afternoons, and occasionally at other random times, to inspect the work and give instructions. Mr. Lopez said Mr. Archie controlled the work: he decided which tools would be used and how the work should be done, although occasionally he allowed the workers to "use our imagination to do our work." Mr. Lopez introduced multiple text messages to show that Mr. Archie directed his work. For example, on September 16, Mr. Archie asked, "Are you going to paper under the porch as well?" Mr. Lopez responded yes. Mr. Archie replied with, "Make things go quicker. Put first coat on all then start second coat."

Mr. Lopez said that when helpers were needed, Mr. Lopez or another worker would "recommend" someone, but Mr. Archie always met with the individual first and did the

---

proof that they are reasonable, necessary, and causally related to the work accident to be admitted into evidence).

[2] Mr. Lopez offered two sets of text messages. Bud Archie Painting objected to both, arguing that they were not filed with the Court Clerk in accordance with the rules. *See* Tenn. Comp. R. & Regs. 0800-02-21-.15(1) (February, 2022) (A request for expedited hearing must be accompanied by "any other documents demonstrating the party is entitled to the requested relief.") However, its counsel acknowledged that Mr. Lopez gave him a copy of one set of messages but never provided the second set. The Court admitted the first set over the objection because Bud Archie Painting's attorney had seen them and was not prejudiced by their admission. Further, Mr. Lopez disclosed on a witness and exhibit list that he planned to offer the texts, and counsel did not question their authenticity. The Court sustained the objection regarding the texts counsel had not seen.

2

actual hiring. Mr. Archie decided how much the helpers were paid, and he paid them. Mr. Lopez offered copies of payment to a coworker drawn on "Bud Archie Painting" checks.[3]

Mr. Lopez said that Mr. Archie provided the paint, ladders, plastic, sprayer, drywall, tape, plastic, zippers, material to secure the plastic to the roofing, sandpaper, masks, and uniforms. Mr. Lopez was not responsible for purchasing any of these items. The text messages support that Mr. Archie provided the tools. For example, on August 25, Mr. Archie wrote, "I picked up 10 gallons this morning for siding[.]"

Over the years, Mr. Lopez worked continuously for Mr. Archie, except when Mr. Lopez left for an undetermined length of time in either 2013 or 2014. Moreover, on another occasion, Mr. Lopez told Mr. Archie that another contractor had offered him more money. Mr. Archie matched that offer, so Mr. Lopez stayed.

Mr. Lopez offered the testimony of two coworkers. Pablo Vite, who worked for Bud Archie Painting for about eleven years, and Armando Izaguirre, who worked for the company for approximately a year and a half. Neither worked for anyone else during their time with Bud Archie Painting. Mr. Vite considered Mr. Archie a "boss." Both confirmed that Mr. Archie set the work schedule and told them how the work needed to be done. Mr. Izaguirre said that Mr. Archie would arrive at the worksite in the mornings to verify what time the workers arrived. Both coworkers said that Mr. Archie hired the workers, and Mr. Vite stated that the workers never provided ladders, paint or sandpaper.

Mr. Archie testified that he exerted little control over how Mr. Lopez performed his duties. Rather, he said that the client's wishes, homeowners' associations, and local ordinances dictated how certain activities were done. For example, a client might want a particular area of a project completed first, or a neighborhood's rules or town laws might mandate that work be done only within certain hours of the day.

Mr. Archie clarified that he "would introduce Mr. Lopez to the client. We would discuss the scope of work. And I would leave it to his discretion on how he wanted to perform the services." In response, Mr. Lopez agreed that occasionally he, Mr. Archie, and the homeowner would meet to discuss something that needed to be "fixed," but they never talked about the timeframe.

Mr. Archie said Mr. Lopez set his own hours. Mr. Archie offered a text message where he asked Mr. Lopez if he wanted to start work at 6:00 or 6:30 a.m., but Mr. Lopez declined.

---

[3] Bud Archie Painting objected to the admissibility of the checks but agreed that Mr. Lopez had given it copies in response to written discovery, so the objection was overruled.

Mr. Archie paid Mr. Lopez and his helpers weekly lump sums, regardless of how many hours they worked. On the advice of his accountant, Mr. Archie gave Mr. Lopez W-9 federal tax forms, on which Mr. Lopez checked a box classifying himself as an "individual, sole proprietor, or single-member LLC." Mr. Archie additionally introduced two 1099s documenting the sums he paid Mr. Lopez as "nonemployee compensation."

Mr. Archie said that Mr. Lopez was free to work for other contractors if he wished to do so. The parties did not have a written noncompete agreement. He pointed out that in fact Mr. Lopez did work for someone else in 2013 or 2014. Mr. Archie said that when Mr. Lopez needed help, he would meet potential hirees, whom Mr. Lopez recommended, and then "say okay."

Mr. Archie's affidavit stated that, on the date of the accident, he provided "two ladders, a walk board and a spray paint gun"; otherwise, Mr. Lopez brought his own tools. Mr. Archie explained that he "made them [the tools] available," and the workers could use the tools "at their discretion."

On the day of the accident, Mr. Archie was in another state. His affidavit states he "was managing" the project and "not physically involved in the process of painting the residence." Mr. Archie returned to Tennessee immediately when he learned of the accident and a week later offered Mr. Lopez $500 to help support his family.

**Findings of Fact and Conclusions of Law**

Mr. Lopez must present sufficient evidence to show that he would likely prevail at a final hearing. Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Employee v. independent contractor*

To recover workers' compensation benefits, a claimant must be an employee and not an independent contractor. *Peters v. Mitchell d/b/a A Clean Connection, LLC,* 2016 TN Wrk. Comp. App. Bd. LEXIS 7, at *7 (Feb. 8, 2016). Whether the worker is an employee or subcontractor depends on the nature of the business, the way it is conducted, and the worker's relationship to that business. *Seals v. Zollo*, 327 S.W.2d 41 (Tenn. 1959). When in question, the worker claiming an employment relationship exists bears the burden of proof, to be determined by considering the following factors:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;

4

(f) Self-scheduling of work hours;

(g) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(10)(D)(i). While no single factor is determinative, the Tennessee Supreme Court has repeatedly emphasized the importance of the "right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Smiley v. Four Seasons Coach Leasing*, 2016 TN Wrk. Comp. App. Bd. LEXIS 28, at *10-11 (July 15, 2016) (internal citations omitted).

In *Peters,* the alleged employer had instructed the injured worker "where and when to report to work," and gave the worker "a list of tasks" to perform. At the end of each project, either the alleged employer or the injured worker, in his capacity as "jobsite supervisor," would review the list and ensure that each task had been completed. The alleged employer also provided a "timeframe" to complete the list of tasks assigned to them. The Appeals Board concluded that these facts supported the existence of an employer-employee relationship. *Peters,* at *9-10.

Here, as in *Peters,* Mr. Archie told Mr. Lopez and other crew members where and when to work, and the text messages show that they needed permission to deviate from those hours. While Mr. Archie did not use lists, he did communicate how tasks needed to be done within various text messages. Mr. Archie made daily visits─sometimes at unpredictable times─to make sure the crew started on time and to monitor the work. The frequent communication with Mr. Lopez and his intermittent presence on the jobsites show that Mr. Archie possessed and exercised the right to control the vast majority of Mr. Lopez's work activities. Further, Mr. Archie's attempt to deflect the control he exerted to clients/homeowners is unpersuasive, and his attorney cited no case law to support this argument.

As for the right of termination, "the ability to terminate a business affiliation at will is consistent with the existence of an employer-employee relationship." *Id.* at *11. Here, no written agreement was in place. Either party was free to end the relationship at any time, and Mr. Lopez did so─*once,* over the course of thirteen years, and then he returned. This factor suggests he was an employee.

Regarding the method of payment, Mr. Lopez was given a 1099, and no taxes were withheld. In addition, Mr. Lopez, *on Mr. Archie's request,* completed a W-9. The W-9 form does not give the option for the person completing the form to check a box classifying himself as an "employee." As the Appeals Board has explained, an individual's decision to pay workers as "1099 contractors" weighs against a claimant's status as an employee; but "this factor, standing alone, is insufficient to overcome the other factors that support finding an employment relationship." *Smiley,* at *14.

5

Turning next to the freedom to select and hire helpers, Mr. Lopez recommended candidates, but Mr. Archie met with them and ultimately did the hiring. Mr. Archie used different words but generally described the same process. He paid them as well, as verified by the coworkers' testimony. This factor favors an employment relationship.

As to the furnishing of tools, the testimony conflicts. Mr. Lopez gave a lengthy, detailed list of items that Mr. Archie provided, while Mr. Archie said that, on the date of the accident, he merely provided two ladders, a walk board and a sprayer. Mr. Archie also said that the workers had "discretion" as to whether they would use the tools.

The Court accepts Mr. Lopez's testimony over Mr. Archie's on this point, finding him generally a more credible witness. During Mr. Lopez's lengthy testimony and cross-examination, Mr. Lopez appeared calm, self-assured, forthcoming, and honest. Mr. Archie, however, was hesitant and defensive at times, and he occasionally could not recall key events on cross-examination. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014) (Indicators of witness credibility include whether a witness is "calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful[.]").

Mr. Vite testified that Mr. Archie provided paint and ladders, and the text messages document conversations where Mr. Archie agreed to bring paint and other materials to a jobsite, supporting Mr. Lopez's version. In addition, Mr. Archie's focus on which equipment was on the jobsite on the date of the accident is misplaced, since the Court is to examine the relationship as a whole and not just at the time Mr. Lopez became injured. As to the workers having "discretion" to use Mr. Archie's tools, they could not complete the work without using the provided tools. The Court finds that Mr. Archie provided the tools and equipment. This factor also favors an employment relationship.

Concerning self-scheduling, the Court finds that Mr. Archie set Mr. Lopez's hours. Again, the testimony conflicts. Mr. Archie offered *one* text exchange where Mr. Lopez declined to start earlier than the usual time. In contrast, Mr. Lopez offered several text messages between him and Mr. Archie to support that he started at an expected time and needed to notify Mr. Archie if he was arriving late, and that the workers needed permission to leave early. Mr. Izaguirre similarly testified that Mr. Archie set their hours.

The final factor is freedom to offer services to other entities. Mr. Archie testified that no written noncompete agreement prevented this. However, given that Mr. Lopez testified that he worked on Bud Archie Painting projects for approximately forty hours per week consistently for many years, offering his services to other entities was technically a possibility but not likely, given that working for Mr. Archie took up most of his working hours. This factor does not apply.

6

In sum, almost all of the statutory factors favor a finding that Mr. Lopez was an employee. The Court holds that Mr. Lopez is likely to prevail at a hearing on the merits in showing that he was an employee. Therefore, he is entitled to benefits.

*Requested benefits*

Mr. Lopez, as the employee in a workers' compensation case, has the burden of proving all essential elements of his claim for benefits. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

Turning first to medical benefits, section 50-6-204(a)(3)(A)(i) states that an employer "shall designate a group of three (3) or more independent reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician." Under this subdivision, Bud Archie Painting must offer a panel of orthopedic/hand specialists, from which Mr. Lopez may select a treating physician. The treating physician shall evaluate him, determine if any further treatment is necessary or place him at maximum medical improvement, and assign an impairment rating. Tenn. Code Ann. § 50-6-204(k)(1); Tenn. Comp. R. & Regs. 0800-02-17-.25(1)-(2) (September, 2021).

As for past treatment, "an employer who does not timely provide a panel of physicians risks being required to pay for treatment an injured worker receives on his own." *Ducros v. Metro Roofing and Metal Supply Co.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 62, at *10 (Oct. 17, 2017). However, Mr. Lopez did not offer medical bills in an admissible form, so the Court cannot order payment at this time. He may get additional documentation to authenticate these bills and seek payment at a later hearing.

Mr. Lopez also requested temporary disability benefits. He must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Mollica v. EHHI Holdings, Inc. d/b/a Advanced Home Care Mgmt. Inc., d/b/a Encompass Home Health,* 2020 TN Wrk. Comp. App. Bd. LEXIS 22, at *7 (Apr. 21, 2020).

Mr. Lopez offered no admissible proof that he suffered a compensable injury that totally disabled him or partially restricted him from work. The records are also unclear regarding the duration of his disability. This request is denied at this time, but he may obtain the essential medical proof and renew this request at a later hearing.

IT IS ORDERED AS FOLLOWS:

1. Bud Archie Painting and its carrier must offer a panel of orthopedists/hand specialists within ten business days of this order, for Mr. Lopez to select a physician for any reasonable and necessary medical treatment causally related to the work injury under Tennessee Code Annotated section 50-6-204(a)(1)(A). They shall immediately schedule an appointment once Mr. Lopez makes his selection.

2. The Court sets a status hearing on **August 7, 2023, at 10:30 a.m. Central Time.** You must dial (615) 532-9552 or (866) 943-0025 to participate. Bud Archie Painting must arrange for a court-certified or registered interpreter.

3. Unless interlocutory appeal of the expedited hearing order is filed, compliance with this order must occur no later than seven business days from the date of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3). Bud Archie Painting and/or the carrier must submit confirmation of compliance with this order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED May 30, 2023.**


_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

8

**Appendix**

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice, and Employer's Additional Information
3. Order Setting Status Hearing
4. Order on Status Hearing
5. Hearing Request
6. Order Setting Expedited Hearing
7. Employer's Position Statement, Witness List, and Exhibit List
8. Employee's Witness and Exhibit List

Evidence:
1. Declaration of Mr. Lopez
2. Medical records
3. Notice of Denial
4. Wage statement
5. Affidavit of William Archie
6. Text messages between the parties
7. Text messages between the parties (identification only)
8. Paychecks
9. W-9s (2018, 2019) and 1099s (2021, 2022)
10. Copies of checkbook ledger
11. Text message

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on May 30, 2023.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Sergio Lopez | | X | X | Galactor99@yahoo.com<br>720 Glencliff Court<br>Nashville, TN 37211 |
| Fred Baker, J. Brent Wilkins, respondent's attorneys | | | X | fbaker@wimberlylawson.com<br>brentwilkins@wimberlylawson.com<br>bcopeland@wimberlylawson.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____        ☐ Motion Order filed on _____

☐ Compensation Order filed on_____        ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*